UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **RICKY GRUBBS** | § | CIVIL ACTION NO. |
| | § | |
| *Plaintiff* | § | |
| | § | |
| *vs.* | § | |
| | § | |
| **FORD MOTOR COMPANY** | § | |
| | § | |
| *Defendant* | § | JURY TRIAL REQUESTED |

### COMPLAINT

#### I.   Parties

1. Plaintiff, RICKY GRUBBS, is an individual of the lawful age of majority and citizen of the State of Texas.

2. Defendant, FORD MOTOR COMPANY, hereinafter "FORD," is a Delaware and Michigan citizen and a corporation with its principal place of business in Wayne County, Michigan and is the engine and chassis manufacturer of the recreational vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

FORD's agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

#### II.   Jurisdiction

3. This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

Declaratory relief is available pursuant to 28 USC §§ 2201 and 2202. The court has

supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III.   Venue

4.   Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant is subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

Venue is also proper in this district under Tex. Bus. & Com. Code §17.56. VENUE. An action brought under this subchapter may be brought:

(1)   in any county in which venue is proper under Chapter 15, Civil Practice and Remedies Code;  or

(2)   in a county in which the defendant or an authorized agent of the defendant solicited the transaction made the subject of the action at bar.

Venue is also proper in this district under Tex. Bus. & Com. Code §15.033. Breach of Warranty By Manufacturer:

A suit for breach of warranty by a manufacturer of consumer goods may be brought in any county in which all or a substantial part of the events or omissions giving rise to the claim occurred, in the county in which the manufacturer has its principal office in this state, or in the county in which the plaintiff resided at the time the cause of action accrued.

### IV.   Conditions Precedent

5.   All conditions precedents have been performed or have occurred.

### V. Facts

#### A. The Transaction

6. On or about March 26, 2020, Plaintiff purchased a new 2020 FORD F-150 VIN: 1FTFW1RGXLFB33638, hereinafter "F-150," from WILLS POINT FORD, INC. The F-150 was purchased primarily for Plaintiff's personal use. The sales contract was presented to Plaintiff at the dealership and was executed at the dealership.

7. The sales price of the F-150 was $73,33430, excluding finance charges. Civil or Punitive penalties for breach of warranty are recoverable, if they are recoverable for breach of of implied and express warranties under the applicable state law.  See *Hughes v. Segal Enterprises, Inc.*, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); *Chariton Vet Supply, Inc. v. Moberly Motors Co.*, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).

#### B. Implied Warranties

8. As a result of the sale of the F-150 an implied warranty of merchantability arose in the transaction which included the guarantee that the F-150 would pass without objection in the trade under the contract description; and that the F-150 was fit for the ordinary purpose for which such a F-150 is purchased.

9. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant and its authorized dealers. Specifically, Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

#### C. Express Warranties

10. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the F-150

occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the F-150 had, in fact, repaired the defects.

11. Plaintiff's purchase of the F-150 was accompanied by express warranties offered by the Defendant and extending to Plaintiff. These warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the F-150.

12. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the GENERAL MOTORS's warranty booklet and owners manual.

### D.    Actionable Conduct

13. In fact, when delivered, the F-150 was defective in materials and workmanship, with such defects being discovered shortly after purchased. Many defective conditions have occurred since purchase, including, but not limited to, the defects, non-conformities and conditions as follows:

    **A.** **ELECTRICAL DEFECTS;**

    **B.** **ANY AND ALL DEFECTS, NON-CONFORMITIES AND CONDITIONS LISTED ON ANY AND ALL REPAIR ORDERS;**

    **C.** **THE F-150 WAS OUT OF SERVICE OVER 90 DAYS.**

14. Since purchase, Plaintiff has returned the F-150 to the Defendant and/or its authorized dealers for repairs on numerous occasions. During the first two years, the F-150 was in for repairs at least 9 times for a total of more than 65 days. Despite this prolonged period during which the Defendant was given the opportunity to repair the F-150 the more significant and

dangerous conditions were not repaired. Defendant failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein.

15. The defects experienced by the Plaintiff with the F-150 substantially impaired its use, value and safety. Despite Plaintiff's repeated efforts to allow the Defendant the opportunity to repair the F-150 many nonconforming and defective conditions were never repaired. From the date of its purchase, the F-150 continues to this day to exhibit some or all of the nonconformities described herein.

16. Plaintiff directly notified the Defendant of the defective conditions of the F-150 on several occasions. Plaintiff notified the Defendant that he desired a buy-back of the F-150 but the Defendant has failed and refused to buy back Plaintiff's defective F-150.

### VI.   Causes of Action

**COUNT 1:  VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

17. Plaintiff realleges and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

18. Plaintiff is a "consumer" as defined in the DTPA.

19. Defendant violated the following provisions of the DTPA:

    a. §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12), §17.46(b)(13), §17.46(b)(20), §17.46(b)(22) and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiff;

    b. §17.50(2): breach of express warranty, as defined in §2.313 of the Tex Bus and Com Code (the warranty failed of its essential purpose and Plaintiff was deprived of substantial value of bargain because the defect was not corrected within

           reasonable time);

    c.    §17.50(2): breach of the implied warranty to perform repairs in a good and workmanlike manner, as set forth in Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 354 (Tex. 1987);

    d.    §17.50(2): breach of the implied warranty of merchantability as defined in §2.314 of the Texas Business and Commerce Code;

    e.    §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

20. Because of the inherent defects in the F-150 which defects existed at the time the automobile was sold although not discovered until later, the automobile was not merchantable in that it would not pass without objection in the trade under the contract description and it was not fit for the ordinary purpose for which such automobiles are used. Furthermore, the Defendant failed to perform the repair work in a good and workmanlike manner. This conduct by the Defendant constitutes a breach of the implied warranties described above, which breach is actionable under DTPA § 17.50(a)(2).

21. When the automobile was not repaired, the express warranties that it would be and had been repaired were breached. The Defendant's breach of the express warranties is actionable under DTPA § 17.50(a)(2).

22. The Defendant's statements that the F-150's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of the Defendant's services. For this reason, these representations were false, misleading and deceptive as defined in DTPA § 17.46(b)(5) and (7); and this conduct is actionable under DTPA § 17.50(a)(1).

23. The Defendant acts or practices in the selling and/or repairing of the F-150 to Plaintiff

were unconscionable actions or courses of action because they tool advantage of the Plaintiff's lack of knowledge, ability, experience, or capacity of the Plaintiff to a grossly unfair degree. For this reason, this transaction was unconscionable and is actionable under DTPA § 17.50(a)(3).

24. Plaintiff further contends that the Defendant's violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA entitling Plaintiff to seek civil penalties in trebling of his actual damages in accordance with the DTPA.

25. This conduct was a producing and/or proximate cause of actual damages to Plaintiff, as set forth below.

26. The limited remedy in the Defendant's warranty fails of its essential purpose and deprives Plaintiff of the substantial value of the bargain because the Defendant or its authorized dealerships did not correct the defects within a reasonable time. Tex. Bus. and Com. Code § 2.719. Therefore, any purported limitation of remedies is ineffective.

27. The exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

28. This conduct was a producing and/or proximate cause of actual damages to Plaintiff, as set forth below.

29. As a direct and proximate result of the Defendant's willful violation of its obligations under the DTPA, Plaintiff has suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the F-150 damages associated with the inconvenience suffered as a result of the complete failure of the F-150 to operate properly, the loss of use of the F-150 during the weeks it has been in the garage for repairs, the cost of repairs related

to these defects, loss of wages, and attorneys' fees. Plaintiff has incurred and will continue to incur in order to protect his rights in this matter. The precise amount of damages is unknown at the present time but is estimated to be in excess of $150,000 and will be shown according to proof at trial. Attorneys' fees, loss of use, interest, and other damages continue to accrue.

30. Under the DTPA, Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails. As a proximate result of Defendant's misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:   BREACH OF EXPRESS WARRANTIES**

31. Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

32. The Defendant's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiff's F-150 or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendant issued an expressed written warranty which covered the F-150 and warranted that the F-150 was free of defects in materials and work quality at the time of delivery.

33. As alleged above, the Defendant breached its warranties by offering for sale, and selling as safe to Plaintiff, an F-150 that was latently defective, unsafe, and likely to cause economic loss to Plaintiff.

34. In breach of the foregoing warranties, the Defendant have failed to correct said

defects.

35. The damages Plaintiff has suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 3:   BREACH OF IMPLIED WARRANTIES

36. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

37. The Defendant impliedly warranted that Plaintiff's F-150 which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

38. Any purported limitation of the duration of the implied warranties contained in the written warranties given by the Defendant is unreasonable and unconscionable and void under the principles of estoppel, because the Defendant knew the defects existed and might not be discovered, if at all, until the F-150 had been driven for a period longer than the period of the written warranty, and the Defendant willfully withheld information about the defects from Plaintiff.

39. Because of the defects, Plaintiff's F-150 is unsafe and unfit for use and has caused economic loss to the Plaintiff. Therefore, the Defendant breached the implied warranty of merchantability.

40. The damages Plaintiff has suffered are a direct and proximate result of Defendant' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages;

loss of use; damages; and attorney fees.

## VII.    Economic and Actual Damages

41.    Plaintiff has sustained the following economic and actual damages as a result of the actions and/or omissions of Defendant described herein above:

      a..    Out of pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

      b.    Loss of use;

      c.    Loss of the "benefit of the bargain";

      d.    Diminished or reduced market value; and

      e.    Costs of repairs.

## VIII.    Damages for Mental Anguish

42.    Plaintiff would further show false, misleading and deceptive acts, practices and/or omissions described herein above were committed "knowingly," as provided by Section 17.45(9) of the Texas Business and Commerce Code, in that Defendant had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

43.    As a result of such acts, practices and /or omissions, Plaintiff sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Section 17.50(b) of the Texas Business and Commerce Code, and for which Plaintiff hereby sues in an amount in excess of the minimum jurisdictional limits of this Court.

## IX.    Multiple Damages

44.    The Defendant's conduct in violation of the DTPA was committed knowingly, as that

term is defined in that the Defendant had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

45.     Plaintiff further shows that such acts, practices, and/or omissions were committed "intentionally" in that Defendant specifically intended that Plaintiff act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

46.     Therefore, Plaintiff is entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of his economic damages.

## X.     Attorney Fees and Costs

47.     Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of the Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XI.     Prayer

48.     For these reasons, Plaintiff prays for judgment against the Defendant for the following:

    a.     For general, special and actual damages according to proof at trial;

    b.     Rescinding the sale of the 2020 FORD F-150 VIN: 1FTFW1RGXLFB33638 and returning to Plaintiff the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c.    For incidental and consequential damages according to proof at trial;

    d.    Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

    e.    Any diminution in value of the F-150 attributable to the defects;

    f.    Past and future economic losses;

    g.    Prejudgment and post-judgment interest;

    h.    Damages for loss of use of vehicle;

    I.    Civil Penalties and/or Punitive damages;

    j.    Damages for mental anguish;

    k.    Attorney fees;

    l.    Costs of suit, expert fees and litigation expenses; and

    m    All other relief this Honorable Court deems appropriate.

### XIII. Demand for Jury Trial

49.    Plaintiff hereby demands trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFF